UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

ASTLEY LEE FOSTER,    )   CASE NO. 4:07 CV0744
                     )
    Petitioner,    )   JUDGE PETER C. ECONOMUS
                     )
v.                   )
                     )   MEMORANDUM OF OPINION
                     )    AND ORDER
ALBERTO GONZALES, et al.,    )
                     )
    Respondents.    )

On March 14, 2007, pro se petitioner Astley Lee Foster filed the above-captioned petition for a writ of habeas corpus against Attorney General Albert Gonzales, the Bureau of Immigration and Custom Enforcement ("BICE") and Warden Robert Tapia at the Northeast Ohio Correctional Center in Youngstown, Ohio ("N.E.O.C.C.") pursuant 28 U.S.C. § 2241, as well as federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Mr. Foster, who is incarcerated at N.E.O.C.C., seeks an order from this court directing the BICE to reopen his deportation hearing because it deprived him of "equitable and due process rights of which he was entitled to." (Pet. at 2.)

One week after filing the present petition, Mr. Foster filed a Motion for Injunction

on any further deportation proceeding by the Immigration and Naturalization Services (I.N.S.)[1] He is seeking a stay of any further proceedings to deport him pending this court's disposition of his habeas petition. For the reasons set forth below, the court will deny the petition.

*Background*

Mr. Foster immigrated to the United States from Jamaica in 1984 after "first obtaining lawful resident status from the United States Embassy in Jamaica."[2] (Pet. at 3.) Three years later, he was charged with distribution of a controlled substance.[3] He was convicted of the charge on February 6, 1990 and sentenced to one year in prison.

In the spring of 1991, Mr. Foster was again charged with distribution of a controlled substance. He pleaded guilty to the charges and was sentenced to four years in prison. After serving two and one half years of the sentence petitioner was released on parole by the State of Maryland Department of Corrections.

A review of the Habeas Form petitioner completed in support of his present petition indicates that he was sentenced to two years of probation in the United States District Court for the District of Maryland on September 18, 1995. That same year, the Immigration and Naturalization

---

[1] On March 1, 2003, the INS was abolished and its functions transferred to three bureaus within the Department of Homeland Security. See 6 U.S.C. § 291. The immigration enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("BICE") within the Department of Homeland Security. Because the major events in this litigation occurred before the creation of BICE, the court may refer to the government agency as I.N.S. where appropriate.

[2] Two years earlier, he married his "childhood sweetheart" with whom he had two children in 1988 and 1989.

[3] Mr. Foster's petition does not disclose within what court or upon what statutory violation any of his convictions were based.

Service (I.N.S.) "initiated [a] deportation hearing in Jessup, Maryland." (Pet. at 3.) It appears that two hearings may have been held because Mr. Foster states that he was advised to "round-up letters of references [sic] and present evidence on his behalf, [and the judge] [t]hen rescheduled proceedings for a month later." (Pet. at 5.)

It was during the second hearing that the Immigration Judge (IJ) asked Mr. Foster about

> the two other children from Foster's long time extra martial [sic] affair, and wanted to know how those tow [sic] kids were doing. Foster explained that they lived with an uncle and were attending school and were receiving a monthly compensation. For this reasons, [sic] the IJ expressed concern and belief [sic] that Foster[']s lawful marriage to Mrs. Foster was questionable. He also wanted to know, why Mrs. Foster was not present at this very important hearing. To which, Foster explained that because he was moving in a pro se fashion and representing himself, he was unaware that his wife could attend the hearing at the prison, and therefore failed to make appropriate accommodation.

(Pet. at 5-6.) He claims that IJ used his wife's absence as the sole reason for deporting him. He adds that the IJ ordered him deported "without discussing any possible discretionary relief remedies or the fact that he could appeal the IJ's decision." (Pet. at 4.) The date on which the IJ issued his determination is not set forth in the petition; however, it is clear that the deportation proceedings commenced at some time in 1995.[4]

---

[4] The relief petitioner claims he was eligible for in 1995 was a waiver of deportation by the Attorney General under section 212(c) of the Immigration and Naturalization Act of 1952 as amended in 1990, which has since been repealed but was then codified at 8 U.S.C. § 1182(c). A full explanation of the source of this potential relief was given in I.N.S. v. St. Cyr, 533 U.S. 289 (2001), and need not be repeated here. The Bureau of Immigration Appeals (BIA) has held that the
(continued...)

*Analysis*

Mr. Foster requests this court's resolution of the following four issues of law: (1) [w]hether the IJ's failure to inform Foster of his right to seek discretionary relief was procedural error sufficient to render the deportation order fundamentally unfair and if Foster was prejudiced by that failure; (2) [w]hether not affording or advising Foster of discretionary relief and discriminating [sic] him for his wife's absence composed [sic] to due process of law; (3) [w]hether the IJ''s failure to advise Foster of his appleate [sic] rights warrants reopening of this deportation hearing, and (4) [w]hether Foster had an international right pursuant to the Vienna Convention on Consular Rights, to be informed of all his rights. (Pet. at 4.)

To the extent petitioner is merely challenging a final order of deportation, § 2241 offers him no avenue to relief. Since the enactment of the AEDPA and Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), immigration law has continued to change. On May 11, 2005, the REAL ID Act of 2005 ("RIDA") was signed into law. Pub.L. No. 109-13, Div.B, 119 Stat. 231, 302 (codified as amended in scattered sections of 8 U.S.C.) Inter alia, RIDA contained the following jurisdictional provision:

> (5) EXCLUSIVE MEANS OF REVIEW.-Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any

---

[4](...continued)
restrictions imposed by the passage of the Anti-Effective Death Penalty Act (AEDPA) did not apply to aliens who applied for § 212(c) relief before the AEDPA was enacted in 1996. In re Soriano, 21 I & N Dec. 516, 1996 WL 426888 (BIA 1996). Thus, the Federal Register provided that certain aliens whose deportation proceedings commenced before April 24, 1996 may apply for §212 relief. Under St. Cyr, the version of 8 U.S.C. § 1182(c) in effect at the time of petitioners' guilty plea should have been applied to his original deportation proceedings. See id. at 326.

> other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of this Act

RIDA §§ 106(a)(1)(B). Therefore, effective on May 11, 2005, RIDA clearly deprived this court of jurisdiction over the petitioner's claims by amending the judicial review provisions of section 242 of the Immigration and Nationality Act (INA), to make a petition for review in the federal courts of appeals the sole means of review of a final immigration "order of removal, deportation, or exclusion." Moreover, while the former § 212(c) explicitly applied only to aliens in exclusion proceedings, courts have construed it as providing relief to aliens facing orders of deportation as well. See Elia v. Gonzales, 418 F.3d 667, 673 (6th Cir.2005) (citing I.N.S. v. St. Cyr, 533 U.S. 289, 295(2001)). Thus, § 212 orders, also, are reviewable only in the courts of appeals. See also Tavares, v. Ashcroft, 371 F. Supp.2d 61 (D. Puerto Rico 2005) .

Consistent therewith, this court finds that it is without jurisdiction to entertain petitioner's claims challenging the decision of the immigration authorities either to remove him from the United States or to deny him a waiver.[5]

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

---

[5] RIDA sets the location for where a petition for review of immigration orders must be filed, i.e., "with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." INA §§ 242(b)(2). On the assumption that the immigration judge's decision was handed down in Maryland, which lies within the territorial jurisdiction of the United States Court of Appeals for the Fourth Circuit, it is the appropriate appellate court to make such review, after exhaustion administratively.

IT IS SO ORDERED.

<u>S/Peter C. Economus - 4/23/07</u>
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE